# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

STACY SELLERS,

    Plaintiff,

    v.

DAIKIN APPLIED AMERICAS, INC.,

    Defendant.

4:25-CV-038

## ORDER

This action is before the Court on Defendant Daikin Applied Americas, Inc.'s motion to dismiss Plaintiff Stacy Sellers's amended complaint. Dkt. No. 23. The motion is fully briefed and ripe for review. Dkt. Nos. 23, 23-1, 28, 30. For the reasons given below, Defendant's motion, dkt. no. 23, is **DENIED.**

## BACKGROUND[1]

### I.   Plaintiff's Employment at Daikin

This is an employment discrimination lawsuit brought by a female employee against her former employer. Dkt. No. 18 ¶ 1. On August 21, 2023, Plaintiff Stacy Sellers began working for Defendant Daikin Applied Americas, Inc. ("Daikin"), a for-profit

---

[1] At the motion to dismiss stage, the Court must "accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff[.]" Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016).

corporation operating across multiple states nationwide. Id. ¶¶ 3, 8. Plaintiff worked in the company's Savannah, Georgia, office as a service coordinator, a position supervised by Daikin manager Robert Gunter ("Gunter"). Id. ¶¶ 3, 9, 10. Plaintiff also worked alongside Justin Juviden ("Juviden"), a Daikin salesman who grew up with Gunter in Statesboro, Georgia. Id. ¶ 12.

Plaintiff claims she experienced a number of issues in the first few months of her employment at Daikin. See, e.g., id. ¶¶ 11-14. First, on or about October 31, 2023, Plaintiff contacted Gunter and explained that she felt she did not receive adequate training for her new role. Id. ¶ 9. Plaintiff alleges that, the next day, Gunter moved Plaintiff closer to another female service coordinator, stating that "women would figure it out." Id. ¶ 10. However, Gunter did not otherwise address Plaintiff's training concerns. Id. Second, Plaintiff claims Juviden frequently made "inappropriate comments" to her during her first four months at Daikin, comments which were often "sexual in nature." Id. ¶ 11. And Juviden allegedly degraded Plaintiff on a constant basis. Id. ¶ 13. For example, on January 30, 2024, when Plaintiff still had not received any training from Daikin on her role, Juviden purportedly berated Plaintiff about a scheduling inquiry. Id. ¶ 14. Plaintiff had asked Juviden for guidance on a scheduling issue, but, rather than helping, Juviden allegedly grew "irate" and began yelling and cursing at Plaintiff. Id. Plaintiff told

Juviden he needed to learn to communicate better, but Juviden, this time speaking slowly, responded, "How do you want to be communicated [sic], Stacy? Sign language?" Id. Plaintiff believes Juviden used this slowed manner of speaking to suggest that Plaintiff suffered from cognitive issues as a woman. Id. Gunter, who was sitting two seats away during this encounter, did not intervene, but a technician sitting at a nearby table texted Plaintiff after the incident to check on her. Id.

In February 2024, Plaintiff flew to Minnesota for group "service coordinator training" through Daikin—her first training program since beginning her role in August of the prior year. Id. ¶ 15. Plaintiff left for this program on February 5, 2024, and participated in five days of training before returning to work in Georgia. Id. During the five-day period, Plaintiff was approached by a trainer, Joy East ("East"), who asked Plaintiff about her experience at Daikin's Savannah office. Id. Plaintiff allegedly told East about her experiences working with Gunter and Juviden, which East then communicated to Steven Bailey ("Bailey"), Gunter's manager. Id. ¶¶ 15-16. Bailey, like Juviden, was a close friend of Gunter. Id. ¶¶ 12, 17. When Plaintiff returned to the Savannah office on February 12, 2024, Gunter spoke with her about the training experience, and, during the conversation, Gunter was allegedly upset that East spoke with Bailey about Plaintiff's "situation with Gunter and Juviden." Id. ¶ 16. Following this

meeting, Gunter purportedly began isolating Plaintiff by failing to communicate with her regarding jobs and otherwise interfering with Plaintiff's ability to do the work she was hired to do. Id. ¶ 18.

On May 13, 2024, Plaintiff filed a complaint with Daikin's human resources department, reporting her negative experiences at the company, including her prior problems with Juviden. Id. ¶ 19. At this point, Gunter had not spoken to Plaintiff in about three weeks, yet, the next day, he summoned her into a conference room. Id. ¶ 20. There, Plaintiff saw another coworker, a technician, sitting with a performance review in his hands. Id. ¶ 21. Gunter confirmed that this was Plaintiff's performance review, and, when Plaintiff inquired about why a particular individual, Jason Watson, was present for the review, Gunter claimed that Watson was "a manager." Id. Plaintiff understood Watson to be a technician supervisor and avers that she did not report to him. Id.

In the meeting, Gunter gave Plaintiff a negative review of her performance, citing issues that had allegedly never been communicated to Plaintiff prior to that day. Id. ¶ 22. Plaintiff mentioned that these issues had never been raised before, which Gunter acknowledged, and Plaintiff further mentioned her concerns about alleged sexual harassment of Plaintiff by Juviden. Id. Gunter responded by stating, "knowing Justin [Juviden], I'm sure he was kidding." Id. However, after this meeting, Plaintiff spoke with an

HR representative on the phone and was assured that her pending complaint would be investigated, then Plaintiff followed up on this conversation by relaying to HR a witness list with relevant contact information. Id. ¶ 23.

After she filed her HR complaint, Plaintiff alleges that she continued to experience problems at work. Id. ¶¶ 24-27. First, Gunter sent her a series of emails finding fault in her performance, despite Plaintiff's claims that company records showed these problems were not caused by Plaintiff but rather other coordinators or even Gunter himself. Id. ¶ 24. Plaintiff believed that these emails sought to harass her for the HR complaint she filed. Id. Second, on June 25, 2024, Gunter and Juviden allegedly installed a wireless doorbell in the office while Plaintiff was on her lunch break. Id. ¶ 25. Whenever she returned to her workspace, the two men would ring the bell and laugh. Id. And third, Plaintiff overheard Gunter speaking with another coordinator, and Gunter allegedly implied that he was going to mess with Plaintiff. Id. ¶ 53.

Finally, on June 28, 2024, Plaintiff was summoned into the conference room to meet with Gunter, where he informed Plaintiff of three complaints that had been relayed to Gunter by another salesman, Brinney Smith. Id. ¶ 27. These complaints pertained to three different jobs, one of which Plaintiff had worked on in April, months prior, yet all of the complaints occurred shortly

after Plaintiff filed her HR complaint. <u>Id.</u> Plaintiff felt blindsided by the onslaught of these complaints and claims that, when she looked up the timestamps on Daikin's systems to determine who was at fault, it revealed that she was not the problem. <u>Id.</u> Neither Bailey nor HR would acknowledge that Plaintiff was allegedly falsely accused of failing to do her job when she brought up these timestamps in a meeting the following day. <u>Id.</u> ¶ 29. At this point, Plaintiff believed Daikin was trying to set up a case for her termination or trying to encourage her to resign, so she decided to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). <u>Id.</u> ¶ 28.

Plaintiff filed her EEOC charge on July 3, 2024. <u>Id.</u> ¶ 30. At the end of that month, Plaintiff noticed that "all" of her coworkers got raises, and most of their performance reviews were not as formal as the review she received. <u>Id.</u> ¶ 31. Plaintiff claims to be the only employee that did not receive a raise. <u>Id.</u> ¶ 32. In the wake of Plaintiff's alleged negative employment experience at Daikin, she began avoiding contact with Gunter and Juviden, started using the employee assistance program for therapy to treat mental health concerns, and eventually requested leave. <u>Id.</u> ¶ 54. In the end, Plaintiff resigned from her role at Daikin around December 2024. <u>Id.</u> ¶¶ 34-37, 61.

## II.  The Present Action

The EEOC responded to Plaintiff's charge by issuing a right to sue notice dated November 22, 2024. Id. ¶ 33. According to the notice,[2] if Plaintiff sought to file a lawsuit in federal court, she had to file that suit within ninety days–giving Plaintiff until

---

[2] The parties dispute whether the Court can consider the right to sue notice itself when ruling on Defendant's motion to dismiss. Dkt. No. 28 at 1–2; Dkt. No. 30 at 3–5. Defendants provided an alleged copy of this notice as an attachment to their motion to dismiss, alongside a letter from the Atlanta District EEOC Office responding to Daikin's request for EEOC records under the Freedom of Information Act ("FOIA") pertaining to this case. Dkt. Nos. 23-1, 23-2. "[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999)). A document is "undisputed" when its authenticity is not challenged. Id. Whether Plaintiff's claims can proceed depends on whether she filed her complaint within ninety days of receiving the notice, which is specifically referenced in the amended complaint. Dkt. No. 18 ¶¶ 33, 39; see also Miller v. Georgia, 223 F. App'x 842, 844 (11th Cir. 2007)("Under Title VII, a plaintiff must file her complaint in the district court within 90 days of her receipt of a right-to-sue letter from the EEOC." (citing 42 U.S.C. § 2000e-5(f)(1))). Plaintiff attempts to dispute this notice on the grounds that the records "were not produced in Defendant's initial disclosures" and lack confirmation that they were "true and correct copies in the chain of custody." Dkt. No. 28 at 2. But, because the authenticity of these public documents cannot reasonably be questioned, especially in light of the FOIA request response provided by Daikin and the fact that Plaintiff did not dispute any of the notice's contents, the Court may consider the EEOC's notice in deciding Defendant's motion to dismiss. See, e.g., Ketring v. Auburn Univ., No. 3:18-CV-619-WKW, 2019 WL 3825333, at *1 (M.D. Ala. Aug. 15, 2019) (labeling EEOC investigative files as "public record[s] whose accuracy cannot reasonably be questioned" (citing Fed. R. Evid. 201(b)(2); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1999))).

and including February 20, 2025[3] to file her complaint in a court of appropriate jurisdiction. Id. ¶ 34.

Plaintiff claims she "diligently pursued her rights day-by-day" from December 2, 2024, until February 20, 2025. Id. ¶ 37. First, on December 2, Plaintiff contacted the EEOC to further understand her right to sue within ninety days, but she was told that the agency could not offer legal advice to elaborate on the right to sue letter's text, nor did it return to Plaintiff requested documents that she previously provided for the agency's investigation. Id. ¶¶ 34, 39. Then, throughout the remainder of the ninety-day period, Plaintiff claims she looked for legal counsel while she was relocating to Texas for a new job, and, when she was unable to find counsel, she studied the process of drafting and filing a federal complaint *pro se*. Id. ¶¶ 34-37. On February 20, the deadline to file her federal complaint, Plaintiff allegedly called the U.S. District Court Clerk's office in Savannah, Georgia, to ask how to file her completed complaint. Id. ¶ 39. Plaintiff avers the Clerk told her filing "was not possible solely because she was *pro se*" but then stated that Plaintiff's filing would be timely if placed in the U.S. Mail by the time the deadline expired. Id. Following this conversation, still on February 20, Plaintiff

---

[3] The parties agree that Plaintiff, after receiving her right to sue notice on November 22, 2024, had up until and including February 20, 2025 to file her federal complaint. Dkt. No. 23-1 at 6; Dkt. No. 28 at 2.

placed her *pro se* complaint in the U.S. Mail, where it was en route to this Court. <u>Id.</u> ¶ 37.[4] Plaintiff's complaint was docketed on February 25, 2025, five days after Plaintiff's last day to file her complaint.[5] <u>Id.</u> ¶ 41.

In the present action, Plaintiff seeks monetary relief from Defendant for alleged employment discrimination. <u>Id.</u> ¶¶ 46–63. Specifically, Plaintiff brings hostile work environment (Count I) and retaliation (Count II) claims against Daikin. <u>Id.</u> ¶¶ 46–63. Defendant moved to dismiss Plaintiff's original complaint, dkt.

---

[4] Plaintiff states that her original complaint was "filed via U.S. Mail on February 20, 2025." Dkt. No. 23 ¶ 37. However, because a key dispute in the present motion is whether Plaintiff's actions sufficed to constitute "filing" as a matter of law, this contention is not entitled to an assumption of truth. <u>See</u> Dkt. Nos. 23, 28, 30; <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) ("[Courts] are not bound to accept as true a legal conclusion couched as a factual allegation.")

[5] Plaintiff clarifies in her amended complaint the circumstances surrounding the filing of her federal action. Dkt. No. 18 ¶¶ 33–43. Defendant takes issue with these allegations appearing "for the first time" in the amended complaint, arguing that Plaintiff added these facts in an attempt to "circumvent" the fact that—in Defendant's eyes—her federal complaint was untimely. Dkt. No. 23-1 at 4. However, at this procedural posture, factual allegations in the complaint, including the facts surrounding Plaintiff's filing that are relevant to the timeliness of the complaint, are entitled to an assumption of truth with reasonable inferences construed in Plaintiff's favor. <u>Ray v. Spirit Airlines, Inc.</u>, 836 F.3d 1340, 1347 (11th Cir. 2016) (citing <u>Ironworkers Local Union 68 v. AstraZeneca Pharms., LP</u>, 634 F.3d 1352, 1359 (11th Cir. 2011)); <u>see also</u> <u>Tucker v. United States</u>, 724 F. App'x 754, 758 (11th Cir. 2018)(construing the record in Plaintiff's favor to determine whether complaint was "filed" for statute of limitations purposes). As such, Defendant's argument regarding Plaintiff's alleged motivation in adding these allegations does not carry the day for the purposes of the present motion.

no. 6, but the motion to dismiss was rendered moot when Plaintiff, who had then retained counsel, filed an amended complaint. Dkt. Nos. 18, 20. Daikin now renews its motion to dismiss, maintaining that the amended complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted. Dkt. Nos. 23, 23-1.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet this standard, a plaintiff does not have to plead "detailed factual allegations," but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). To state a claim that is plausible on its face, Plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, a viable complaint must include more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting

Twombly, 550 U.S. at 555).

At the motion to dismiss stage, the Court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Spirit Airlines, Inc., 836 F.3d at 1347 (citing Ironworkers Local Union, 634 F.3d at 1359). However, legal conclusions are not entitled to the same assumption of truth. Iqbal, 556 U.S. at 678–79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Finally, the Court need not "accept as true a legal conclusion couched as a factual allegation." Papasan, 478 U.S. 265 at 286.

## DISCUSSION

Daikin's motion to dismiss involves two separate issues: (1) whether Plaintiff's amended complaint should be dismissed as untimely, and (2) whether Plaintiff states a plausible hostile work environment claim.[6] This Court holds that Plaintiff's complaint was not timely, but the case should nonetheless survive

---

[6] Defendant's motion to dismiss, dkt. no. 23, does not opine on whether Plaintiff's retaliation claim was plausibly alleged beyond Defendant's argument that the entire case should be dismissed as untimely. See generally Dkt. Nos. 23, 23-1. This does not amount to a concession by Defendant as to the viability of the retaliation claim but does render Defendant's motion, in effect, a partial motion to dismiss. See Grady Mem'l Hosp. Corp. v. Grady Baby Co., No. 1:23-CV-00960-SCJ, 2023 WL 10475996, at *2 n.2 (N.D. Ga. Dec. 5, 2023) (rejecting plaintiff's argument that failing to focus on certain counts in motion to dismiss is a concession by defendant and instead deeming the motion a partial motion to dismiss).

dismissal at this stage because it is plausible that equitable tolling applies. And, further, Plaintiff's amended complaint contains sufficient factual allegations to support her hostile work environment claim.

**I.   Plaintiff's original complaint was not timely, but equitable tolling allows the case to proceed past the motion to dismiss stage.**

Though filings made by *pro se* litigants are to be liberally construed, these parties are still required to comply with procedural rules. Tucker, 724 F. App'x at 756-57 (citing Campbell v. Air Jam. Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014); Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007)). This includes statutes of limitations. Id. (citing Outler v. United States, 485 F.3d 1273, 1282 n.4 (11th Cir. 2007) ("*[P]ro se* litigants, like all others, are deemed to know of the . . . statute of limitations.")). These rules governing access to the federal court system may not be "disregarded by courts out of a vague sympathy for particular litigants." Jarrett v. US Sprint Comm'ns Co., 22 F.3d 256, 260 (10th Cir. 1994). Strict adherence to such procedural requirements is a bedrock rule, which, "in the long run," "is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980); see also United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000) ("[F]oreclosing litigants from bringing their claim because they missed the filing deadline by one day may seem harsh, but courts have to draw lines

somewhere, [and] statutes of limitation protect important social interests[.]").

On one hand, Daikin argues that Plaintiff filed an untimely complaint that should be dismissed with prejudice. Dkt. No. 23 at 6–11; Dkt. No. 30 at 5–6. But, on the other hand, Plaintiff contends that her original complaint was timely in that the Clerk had "constructive possession" of the complaint prior to the filing deadline. Dkt. No. 28 at 2–4. And Plaintiff argues that equitable tolling should allow this case to proceed even if the complaint was untimely.[7] Id. The Court holds that the complaint was not filed within the limitations period but nonetheless escapes dismissal because equitable tolling doctrine has been plausibly invoked.

### A. Plaintiff's Complaint was untimely.

Title VII of the Civil Rights Act of 1964 provides the applicable limitations period for plaintiffs who, after filing a charge of discrimination with the EEOC, receive a right to sue letter. See 42 U.S.C. § 2000e-5(f)(1). Under Title VII, a plaintiff "must file her complaint in the district court within 90 days of her receipt of a right-to-sue letter from the EEOC." Miller, 223 F. App'x at 844 (citing 42 U.S.C. § 2000e-5(f)(1)). This ninety-day limitation period begins to run when the claimant actually

---

[7] The Court assumes the amended complaint relates back to Plaintiff's initial complaint for timeliness purposes. Tucker, 724 F. App'x at 757.

receives the EEOC right to sue letter. Beazer v. Richmond Cnty. Constructors LLC, No. CV 123-126, 2024 WL 2175717, at *2 (S.D. Ga. May 14, 2024) (citing Zillyette v. Cap. One Fin. Corp., 179 F.3d 1337, 1339 (11th Cir. 1999) ("[S]tatutory notification is complete only upon actual receipt of the suit letter.")).

Generally, "a complaint is 'filed' for statute of limitations purposes when it is 'in the actual or constructive possession of the clerk.'" Rodgers ex rel. Jones v. Bowen, 790 F.2d 1550, 1552 (11th Cir. 1986) (quoting Leggett v. Strickland, 640 F.2d 774, 776 (5th Cir. Mar. 1981)).[8] Absent special circumstances, "mailing alone is not enough."[9] Tucker, 724 F. App'x at 757 (citing Leggett, 640 F.2d at 776); see also Houston v. Lack, 487 U.S. 266, 273 (1988) ("[R]eceipt constitutes filing in the ordinary civil

[8] Fifth Circuit cases decided prior to October 1, 1981, are binding on this Court. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

[9] "The general rule is subject to a few exceptions, most notably for cases involving pro se inmates. The filings of pro se inmates generally are deemed 'filed' when they are delivered to prison authorities for mailing to the court clerk." Tucker, 724 F. App'x at 757. While Plaintiff filed her original complaint pro se, she was not an inmate. Dkt. No. 1; Dkt. No. 18 ¶¶ 33-45. Thus, this exception does not apply, and Plaintiff is subject to the general rule. See, e.g., Boateng v. Coast Prof., Inc., No. 1:24-CV-05929-TRJ, 2025 WL 2743870, at *2 (N.D. Ga. Aug. 13, 2025) (rejecting Plaintiff's argument that the prisoner mailbox rule applied to him as a pro se non-prisoner litigant); Hamilton v. Zaxby's, No. 1:25CV205-RH-HTC, 2025 WL 2714540, at *2 (N.D. Fla. Aug. 21, 2025) (applying general filing rule to pro se litigant who was not an inmate), report and recommendation adopted, 2025 WL 2711588 (Sept. 22, 2025).

case[.]"); Fed. R. Civ. P. 5(d)(2) ("A paper not filed electronically is filed by delivering it: (A) to the clerk; or (B) to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk.").

Importantly, the parties agree that Plaintiff, after receiving her right to sue notice on November 22, 2024, had up until and including February 20, 2025 to file her federal complaint. Dkt. No. 23-1 at 6; Dkt. No. 28 at 2. However, Plaintiff did not place her complaint in the mail until the very last day of this period, following a conversation with the Savannah Clerk's office that day regarding the proper method for Plaintiff to file suit. Dkt. No. 18 ¶¶ 36, 39. There is no dispute that the clerk lacked *actual* possession of the complaint before the filing deadline lapsed. Dkt. No. 23-1 at 7 (citing the "actual or constructive possession" rule and arguing that this possession was not met by the deadline); Dkt. No. 28 at 2-3 (omitting argument that the clerk had actual possession). Rather, Plaintiff argues that her complaint was timely because it was in the "constructive possession" of the clerk. Dkt. No. 28 at 2-3.

This Court holds that the clerk was not in constructive possession of Plaintiff's complaint before the ninety-day limitations period expired. Courts in this Circuit have time and time again held that, in an ordinary civil action, mailing alone

establishes neither actual nor constructive possession by the clerk to render the case "filed." See, e.g., Tucker, 724 F. App'x at 757. (holding that "[m]ailing alone is not enough" to satisfy "actual or constructive possession" test); Hamilton, 2025 WL 2714540, at *2 (same); Boateng, 2025 WL 2743870, at *2 (same); Mcbride v. Guzina, No. 8:21-CV-546-CEH-AEP, 2022 WL 111230, at *11 (M.D. Fla. Jan. 12, 2022) (same). And other circuits allowing for "constructive filing" do so in a narrow set of circumstances inapposite to the present case—namely, when a complaint is in the clerk's custody but subject to a delay in docketing or a pending motion to proceed in forma pauperis. See Jarrett, 22 F.3d at 259 (explaining that the "obvious" rationale behind constructive filing is a situation where a litigant presents a complaint to the court clerk before the deadline, but the clerk does not officially file the complaint until after the deadline expires); see also id. (holding that the "fiction of 'constructive filing'" exists only until a pending in forma pauperis motion is ruled upon).

Further, Plaintiff does not point to any authority suggesting that her phone call with the Savannah Clerk's Office put the clerk in constructive possession of a complaint that had not yet been placed in the mail. Dkt. No. 28 at 2–3 (restating the rule allowing for constructive possession without explaining why this type of possession was achieved before the filing deadline elapsed). The absence of such a rule is for good reason, as it would undermine

16

the core benefits of filing deadlines if plaintiffs could "file"
within the applicable limitations period by simply calling a
court's clerk and mentioning a complaint that may not actually
exist. See Cada v. Baxter Healthcare Corp., 920 F.2d 446, 453 (7th
Cir. 1990) ("[Statutes of limitations] protect important social
interests in certainty, accuracy, and repose."). As such, because
Plaintiff has not met her burden to show her complaint was "filed"
before the ninety-day cutoff, Plaintiff's original complaint was
not timely. Green v. Union Foundry Co., 281 F.3d 1229, 1234 (11th
Cir. 2002) ("[T]he plaintiff has the burden of establishing that
he met the ninety[-]day filing requirement.").

### B. Equitable tolling allows Plaintiff's case to proceed past the motion to dismiss stage.

The ninety-day filing period governing Title VII claims is a
non-jurisdictional time bar, meaning it is subject to equitable
tolling or waiver. Fouche v. Jekyll Island-State Park Auth., 713
F.2d 1518, 1525-26 (11th Cir. 1983). Equitable tolling is an
"extraordinary remedy" under which "plaintiffs may sue after the
statutory time period has expired if they have been prevented from
doing so due to inequitable circumstances." Chang v. Carnival
Corp., 839 F.3d 993, 996 (11th Cir. 2016); Ellis v. Gen. Motors
Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998). To invoke
this doctrine, a party must show: "(1) that he has been pursuing
his rights diligently, and (2) that some extraordinary

circumstance stood in his way and prevented timely filing." Villarreal v. R.J. Reynolds Tobacco Co., 839 F.3d 958, 971 (11th Cir. 2016). Due diligence is a necessary, but not sufficient, prerequisite to a successful tolling argument, and a plaintiff must show more than "garden variety negligence" to excuse a late filing. Chang, 839 F.3d 993 at 996 (citing Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993)).

While the potential application of equitable tolling must be decided on a case-by-case basis, Jarrett, 22 F.3d at 260 (citing Gonzalez-Aller Balseyro v. GTE Lenkurt, Inc., 702 F.2d 857, 859 (10th Cir. 1983)), the Eleventh Circuit has indicated that equitable tolling "may be appropriate if (1) a state court action is pending; (2) the defendant concealed acts giving rise to a Title VII claim; or (3) the defendant misled the employee about the nature of his rights under Title VII." Mesidor v. Waste Mgmt., Inc. of Fla., 606 F. App'x 934, 936 (11th Cir. 2015)(citing Manning v. Carlin, 786 F.2d 1108, 1109 (11th Cir. 1986)). These circumstances, though, are not exhaustive. Washington v. Ball, 890 F.2d 413, 415 (11th Cir. 1989). Finally, it is the burden of the party seeking equitable tolling to show that it is warranted. Joye v. Mabus, No. 3:16-CV-393/MCR/CJK, 2017 WL 4422350, at *2 (N.D. Fla. May 16, 2017) (citing Menominee Indian Tribe of Wis. v. United States, 577 U.S. 250, 254-56 (2016)), aff'd sub nom., Joye v. Sec. Dep't of Navy, 736 F. App'x 861 (11th Cir. 2018).

Here, taking the allegations in the amended complaint as true, Plaintiff placed her complaint in the mail on the last day of the filing period, February 20, 2025. Dkt. No. 18 ¶ 36. The Clerk's Office docketed the complaint on February 25, 2025—five days after Plaintiff's filing deadline expired. Id. ¶ 42. Defendant argues that Plaintiff missed this deadline because she was not diligent, foreclosing equitable tolling. Dkt. No. 23-1 at 8-11; Dkt. No. 30 at 6-10. And Defendant argues that Plaintiff did not face "extraordinary circumstances" either. Id. In response, Plaintiff contends that she "diligently" pursued her rights despite the "extraordinary circumstance" that stood in the way: alleged misinformation about the complaint filing process. Dkt. No. 28 at 3-4. The Court holds that Plaintiff's allegations suffice to warrant more investigation as to whether the deadline should be tolled.

As a preliminary matter, while Plaintiff did mail her complaint before the filing period expired, this alone does not satisfy her duty to act diligently. In fact, plaintiffs are "generally responsible for 'ordinary delays in the mail service,'" and it is "not reasonable to expect an ordinary letter deposited in the U.S. Mail to be delivered that same day." Tucker, 724 F. App'x at 758 (citing Hallgren v. U.S. Dep't of Energy, 331 F.3d 588, 591 (8th Cir. 2003)); see also Strickland v. Wayne Farms-Southland Hatchery, 132 F. Supp. 2d 1331, 1333 (M.D. Ala. 2001)

("When counsel elects to file his complaint near the end of the statute of limitations, and to rely on the postal service in delivering the same, he runs the risk of untimely filing."); L. v. Hercules, Inc., 713 F.2d 691, 692 (11th Cir. 1983) ("Plaintiff should be required to assume some minimum responsibility himself for an orderly and expeditious resolution of his dispute." (quoting Lewis v. Conners Steel Co., 673 F.2d 1240 (11th Cir. 1982)). While equitable tolling would ordinarily not be warranted absent some explanation for this choice, courts do not foreclose tolling where a claimant, by no fault of their own, was "lulled" into inaction by defendant, agencies, or the courts. Carlile v. S. Routt Sch. Dist. RE 3-J, 652 F.2d 981, 986 (10th Cir. 1981).

Here, the Court recognizes that most of Plaintiff's excuses for her untimely filing have, in similar cases, fallen short of the equitable tolling requirements. For example, while Plaintiff claims that she was moving and starting a new job during this period, other employment commitments do not excuse a claimant's failure to formally act on his or her right to sue within the limitations period. See Carlile, 652 F.2d at 986 (characterizing, on appeal of a denied motion to dismiss, sixty-nine-day delay as "inexcusable" for equitable tolling purposes where plaintiff was "apparently working very hard" at her job). And, while Plaintiff contends that the EEOC failed to provide guidance on filing and otherwise did not respond to her document requests, it is unlikely

20

to be an "extraordinary circumstance" for a plaintiff to receive either no response or an incomplete response from the agency. Ramirez v. City of S.A., 312 F.3d 178, 184 (5th Cir. 2002) ("It is not sufficient . . . to show that the EEOC failed to give [a plaintiff] some relevant information; [a plaintiff] must demonstrate that the EEOC gave [her] information that was affirmatively wrong."); Conaway v. Control Data Corp., 955 F.2d 358, 363 (5th Cir. 1992) ("It would be virtually impossible for the EEOC or a defendant to rebut a plaintiff's unsupported allegation that the EEOC provided incomplete information in a telephone conversation."). Further, Plaintiff's untimely filing is not excused merely because she failed to find counsel and had to file *pro se*. See Beazer, 2024 WL 2175717, at *3 ("Plaintiff's 'efforts to obtain legal representation are likewise insufficient to permit equitable tolling.'" (quoting Portis v. World Omni Fin., No. CIV.A. 00-0047, 2000 WL 726220, at *3 (S.D. Ala. May 16, 2000))); id. ("A plaintiff is not required to prosecute a lawsuit with counsel but may proceed *pro se*, and the lack of legal representation does not trigger equitable tolling." (citing Portis, 2000 WL 726220, at *3)). Nor can a plaintiff who was allegedly "misled" by a court's clerk on the *last day* of the filing period use that to justify a lack of diligence prior to that point. Joye, 2017 WL 4422350, at *3 (rejecting plaintiff's equitable tolling argument because she "took no steps to diligently pursue

her case prior to receiving allegedly misleading information from the Clerk's Office"). However, one allegation makes it plausible that Plaintiff acted diligently during the filing period despite her decision to mail the complaint on the last day: Plaintiff's alleged conversation with the EEOC on December 2, 2024. Dkt. No. 18 ¶ 34.

Equitable tolling may be appropriate "when the EEOC misleads a complainant about the nature of his rights under Title VII." Chappell v. Emco Mach. Works Co., 601 F.2d 1295, 1303 (5th Cir. 1979); see also Chavez v. Credit Nation Auto Sales, Inc., 966 F. Supp. 2d 1335, 1349 (N.D. Ga. 2013) (noting that equitable tolling is warranted where plaintiff "attempted to exhaust her administrative remedies in a timely manner, but was thwarted by the EEOC"). Here, Plaintiff contends that, after she received her right to sue letter, she contacted the EEOC for more information on her rights and was told that she had ninety days to "*send* her eventual complaint to a federal court," further contending that this conversation constitutes "misinformation" by the agency. Dkt. No. 18 ¶ 34 (emphasis added); see also Dkt. No. 28 at 4. In doing so, Plaintiff has alleged sufficient facts to invoke the doctrine of equitable tolling at this stage because an affirmative representation by the EEOC that her only duty was to "send" or "mail" her complaint would make it plausible that she acted diligently in waiting until the last day to do that simple task

based on authoritative statements by a federal agency. Villarreal, 839 F.3d at 971; Chappell, 601 F.2d at 1303 ("[A] complainant 'is entitled to rely on . . . seemingly authoritative statement(s) by the agency presumed to know the most about these matters.'" (quoting Page v. U.S. Indus., Inc., 556 F.2d 346, 351 (5th Cir. 1977))). This is enough to surpass a motion to dismiss.

However, at this procedural juncture, rather than deciding whether equitable tolling is, in fact, warranted, the better approach is to allow the parties to engage in discovery on the issue and revisit it with a more fully developed record. Chavez, 966 F. Supp. 2d at 1349 (declining to decide equitable tolling on a motion to dismiss and concluding that "the better approach is to allow the parties to engage in discovery" and, if requested by the parties, "revisit [the] issue with a more fully developed record"). At this stage, the parties have not had the opportunity to develop a record on Plaintiff's interactions with the EEOC, as Plaintiff does not provide further information as to what *exactly* was communicated, the method of communication, or to whom she spoke. Id. As such, this Court holds that it would be premature to dismiss Plaintiff's amended complaint for failure to comply with the ninety-day statute of limitations. See Linton v. Rowan–Cabarrus Cmty. Coll., No. 1:10CV404, 2013 WL 1331680, at *5 (M.D.N.C. Mar. 29, 2013) (denying motion to dismiss where "Plaintiff has plausibly alleged sufficient facts to reasonably invoke the doctrine of

equitable tolling," while noting that "Defendants may raise this issue after discovery on a motion for summary judgment").[10] Accordingly, Defendant's motion to dismiss is **DENIED** with regard to the timeliness issue.

## II. Plaintiff's hostile work environment claim is sufficiently pled.

Title VII prohibits employers from discriminating against an individual because of their sex. Stewart v. Jones Util. & Contracting Co., 806 F. App'x 738, 740 (11th Cir. 2020) (citing U.S.C. § 2000e-2(a)(1)); Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1244 (11th Cir. 2004)). This allows individuals to bring claims challenging a gender-based hostile work environment. Id.

---

[10] While the Court concludes that Plaintiff has met her burden to proceed past the motion to dismiss stage, Defendant may nonetheless raise the timeliness issue again at a later stage of litigation at which time Plaintiff would be required to prove, rather than *plead*, reasons why equitable tolling applies. See, e.g., United States ex rel. Liberty Mech. Servs., Inc. v. N. Am. Specialty Ins. Co., 2 F. Supp. 3d 610, 619 (E.D. Pa. 2014) ("[B]ecause the question [of] whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion." (citing In re Cmty. Bank of N. Va., 622 F.3d 275, 301-02 (3d Cir. 2010))); see also Goldsmith v. City of Atmore, 996 F.2d 1155, 1159, 1161 (11th Cir. 1993) (determining, after a jury trial resulted in entry of final judgment, whether plaintiff's action was timely filed under the principles of equitable tolling). It is at that stage where Plaintiff would likely be expected to proffer evidence that she was actually misled by the EEOC such that equitable tolling may apply. See Edmonston v. MGM Grand Air, Inc., 808 F. Supp. 197, 204 (E.D.N.Y. 1992)(analyzing at the summary judgment stage whether plaintiff provided sufficient "evidence other than his affidavit to support his assertion of misleading by the EEOC" such that tolling doctrine may apply).

(citing Hulsey, 367 F.3d at 1247–48). To plead a hostile work environment claim under Title VII, a plaintiff must plausibly allege: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999)). In cases involving harassment by a supervisor, "an employer may be vicariously liable for actionable hostile environment discrimination caused by a supervisor with immediate (or successively higher) authority over the employee—subject to an affirmative defense." Mendoza, 195 F.3d at 1245 (citing Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)).

For a viable hostile work environment claim, Plaintiff must plausibly allege the "workplace is permeated with discriminatory intimidation, ridicule, and insult." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations omitted). And "there must be some factual basis to show the alleged harassment

was based on the employee's protected characteristic, such as gender." Comerinsky v. Augusta Coating & Mfg., LLC, 418 F. Supp. 3d 1252, 1259-60 (S.D. Ga. 2019) (citing Mendoza, 195 F. 3d at 1245-46).

Defendant first argues that Plaintiff's various allegations are largely "unrelated to any protected characteristic" and "bear no relation to sex." Dkt. No. 23-1 at 13. To this point, Defendant claims that allegations about a lack of training, Plaintiff's supervisors' interference with her ability to perform her job, and other "degradation" do not amount to harassment on the basis of sex. Id. And, while Plaintiff notes "unwelcome conduct, including jokes, slurs, and intimidation" between August 2023 and December 2024, Defendant claims that this lacks much-needed specificity because it does not identify the precise language or behavior challenged by Plaintiff. Id.

While Defendant correctly notes that Plaintiff may not rely solely on conclusory allegations to survive a motion to dismiss, dkt. no. 23-1 at 13-14, the discrete acts in the amended complaint, when read in context, suffice to state a hostile work environment claim. See Edwards v. Prime, Inc., 602 F.3d 1276, 1301 (11th Cir. 2010) ("An introductory conclusion cannot take the place of factual allegations in stating a plausible claim for relief."); Comerinsky, 418 F. Supp. 3d at 1260 (noting that comments relevant to a harassment claim, even if not discriminatory on their face,

nonetheless "do not exist in a vacuum" and need to be read within their broader context).

After applying the "common-sense rule" that courts should consider "the context of offending words or conduct," the court identifies multiple allegations that tie Plaintiff's claim to gender. Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 810 (11th Cir. 2010). For example, Gunter explicitly stated that "women would figure it out" when he chose to move Plaintiff closer to another female service coordinator rather than addressing the training concerns that Plaintiff raised the day prior. Dkt. No. 18 ¶ 10. This clear reference to gender makes it plausible that Gunter's choice to move an employee instead of giving her requested training was related to her sex. See Comerinsky, 418 F. Supp. 3d at 1260 (highlighting instances where gender was explicitly mentioned by defendant in hostile work environment suit); see also Palmer v. McDonald, 624 F. App'x 699, 704 (11th Cir. 2015) (holding that plaintiff could not show a hostile work environment claim, in part because he "alleged no instances from the workplace in which [the protected characteristic] was explicitly mentioned"). Though this comment is not disparaging toward women, it does suggest that Gunter saw Plaintiff as entitled to less training based on her gender—a lack of training that allegedly contributed to the negative environment Plaintiff experienced at work due to excessive degradation from her supervisors. Dkt. No. 18 ¶¶ 13–15.

Further, Plaintiff alleges that both Gunter and Juviden engaged in sexually explicit language or behavior specifically directed toward Plaintiff between August 2023 and December 2024.[11] Dkt. No. 18 ¶ 50. Under Eleventh Circuit jurisprudence, "general vulgarity or references to sex that are indiscriminate in nature will not, standing alone, generally be actionable." Reeves, 594 F.3d at 809. But, at the same time, a woman is not expected to "endure pervasive, derogatory conduct and references that are gender-specific in the workplace." Id. (citing Williams v. Gen. Motors Corp., 187 F.3d 553, 564 (6th Cir. 1999) ("We do not believe that a woman who chooses to work in the male-dominated trades relinquishes her right to be free from sexual harassment.")). These sex-based words and actions lend further credence to the conclusion

---

[11] Defendant argues that general references to "inappropriate comments," "unwelcome conduct," or "sexually explicit language or behavior" are insufficient to support Plaintiff's claim because they are too general. Dkt. No. 23-1 at 13. However, taking these general allegations in context, Plaintiff provides examples of specific statements and interactions that she experienced at Daikin rather than relying on generalities alone. Dkt. No. 18 ¶¶ 8–45. As such, Plaintiff provides sufficient factual support to proceed to discovery on her hostile work environment claim, which may reveal further information about Juviden and Gunter's conduct. See Freeman v. Russell Cnty. Sheriff Heath Taylor, No. 3:15-CV-956-MHT, 2016 WL 7173885, at *4 (M.D. Ala. Nov. 8, 2016) (recommending denial of motion to dismiss where plaintiff "alleged facts which could—through the discovery process—establish a prima facie case for hostile work environment"), report and recommendation adopted, No. 3:15CV956-MHT, 2016 WL 7175610 (M.D. Ala. Dec. 8, 2016); Ellis v. Houston, 742 F.3d 307, 321 (8th Cir. 2014) (accounting for "individual remarks in the . . . complaint and revealed in the discovery process" in hostile work environment analysis).

that Juviden and Gunter created a hostile environment for Plaintiff as a female employee.

Finally, Plaintiff outlines an incident in which Juviden spoke very slowly to her to purportedly insinuate that Plaintiff had some cognitive issues as a woman. Dkt. No. 18 ¶ 14. While Defendant claims it is an analytical "leap" for Plaintiff to interpret this as suggesting Plaintiff had cognitive issues as a woman, dkt. no. 23-1 at 13, Plaintiff's factual allegations are entitled to a presumption of truth at this stage and are to be construed in Plaintiff's favor. Spirit Airlines, Inc., 836 F.3d at 1347 (citing Ironworkers Local Union, 634 F.3d at 1359). And, even if he did not explicitly mention sex in this instance, Juviden's words and tone must be read within the context of a workplace where, allegedly, Plaintiff was made a target of sexual comments and behaviors by Juviden himself, and Gunter, a close friend of Juviden, declined to address training concerns while making explicit reference to Plaintiff's sex. Dkt. No. 18 ¶¶ 8-14; see also Comerinsky, 418 F. Supp. 3d at 1260 (explaining that, even if defendant did not "explicitly state Plaintiff was 'stupid' *because* she was a woman in every instance," seemingly gender-neutral comments could still be relevant when read in the context of defendant's other words or actions). In short, a reasonable inference from these comments and actions is that Juviden and Gunter thought women were less deserving of their time and respect.

29

See id. (analyzing defendant's words and conduct in context and concluding that "[a] reasonable inference from these comments is that [defendant] thought women were not as smart or capable as men and that they should play a subservient role"). This, at the very least, makes it plausible that the alleged harassment of Plaintiff was based on her sex, particularly because Plaintiff repeatedly emphasizes that this was sex-based and provides "no other obvious explanation" for these behaviors. Id.; see also Edwards, 602 F.3d at 1276 (holding that plaintiff did not plausibly allege race-based harassment because plaintiff *specifically alleged* that harassment was motivated by reasons other than race).

Defendant also argues that the amended complaint fails to plausibly allege harassment that is "sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment." Dkt. No. 23-1 at 13. Courts consider both an objective and subjective component to determine whether this element is sufficiently pled.[12] Comerinsky, 418 F. Supp. 3d at 1260. The employee first must "'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms and conditions of employment." Id. (citing Mendoza, 195 F.3d at 1246). And the

---

[12] Defendant does not specifically focus on whether each component—meaning, both the subjective component and the objective component—has been specifically alleged. Rather, Defendant characterizes Plaintiff's allegations as vague and unsupported, citing multiple cases reaching a similar conclusion. Dkt. No. 23-1 at 14.

conduct "must be objectively severe and pervasive enough to alter the terms and conditions of employment, considering all the circumstances." Id. Four factors are relevant to the objective component: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id.

The Court finds that Plaintiff has sufficiently alleged severe and pervasive conduct to satisfy this element. First, Plaintiff, based on the allegations in the amended complaint, subjectively believed that sex was the primary motivating factor in the alleged negative treatment, explicit language and behavior, degradation, and lack of training that she received while working with Juviden and Gunter. See, e.g., Dkt. No. 18 ¶¶ 10, 14, 49–50. And Plaintiff alleges that this degradation and humiliation was constant, whether this was in the performance review setting or when Juviden and Gunter installed a wireless doorbell in the office used to "humiliate" Plaintiff on a consistent basis. Id. ¶¶ 13, 25, 53. Further, this conduct was severe enough for Plaintiff to file an HR complaint based on sex discrimination, report the harassment to Gunter, avoid contact with both Juviden and Gunter, begin therapy to treat mental health concerns stemming from her employment, request leave, and, ultimately, resign from the

company. Id. ¶¶ 8–45. Finally, this conduct prompted Plaintiff to leave her role at Daikin, and her factual allegations make it plausible that Juviden and Gunter's conduct unreasonably interfered with her job performance because she was constantly degraded for problems she was not responsible for, she avoided her supervisor, she developed anxiety and depression resulting from the working environment, and she was constantly humiliated and intimidated by those around her. Id. In short, taking the allegations in the amended complaint as true, "such degrading conduct would likely affect the working conditions of any reasonable woman." Splunge v. Shoney's, Inc., 874 F. Supp. 1258, 1274 (M.D. Ala. 1994) (citing Robinson v. Jack. Shipyards, Inc., 760 F. Supp. 1486 (M.D. Fla. 1991)). Thus, Plaintiff states a plausible hostile work environment claim. As a result, Defendant's motion to dismiss this claim, dkt. no. 23, is **DENIED**.

**CONCLUSION**

The Court concludes that dismissal is improper. Although Plaintiff's original complaint was untimely, the doctrine of equitable estoppel allows the case to proceed past this procedural posture. And the substantive allegations in the amended complaint are sufficient to withstand a motion to dismiss Plaintiff's hostile work environment claim. As such, Defendant's motion to dismiss, dkt. no. 23, is **DENIED**.

**SO ORDERED** this 8th day of December, 2025.

_____

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA